UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SCINDA M. HAMMAN, | ) |
| | ) |
| PLAINTIFF | ) |
| | ) |
| vs. | ) CAUSE NO. 3:17-CV-534 RLM-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| DEFENDANT | ) |

OPINION AND ORDER

Scinda M. Hamman seeks judicial review of a final decision by the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income under Title II of the Social Security Act, 42 U.S.C. §§ 423 and 1382 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court vacates the Commissioner's decision and remands this case for further proceedings consistent with this opinion.

I. BACKGROUND

Scinda M. Hamman filed her applications for benefits in June 2014, alleging that her disability began in March 20, 2012. Ms. Hamman previously had applied for benefits in the spring of 2012; those earlier applications were denied in November 2012, and Ms. Hamman didn't appeal. The 2014 applications were denied after an administrative hearing in which Ms. Hamman

and a vocational expert testified.

At the hearing, the Administrative Law Judge found that Ms. Hamman had severe impairments – sub-average intellectual functioning, depressive disorder, and attention deficit hyperactivity disorder – as well as non-severe impairments – papillary thyroid carcinoma (resulting in a right thyroid lobotomy), hyperthyroidism (treated by medication), degenerative disc disease, and cervical strain (treated by medication and physical therapy). The ALJ ultimately concluded that Ms. Hamman's impairments weren't severe enough, either alone or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ considered listings 12.02 (neurocognitive disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders) in her decision.

The ALJ determined that Ms. Hamman was mildly restricted in her daily living. Ms. Hamman could neither cook nor clean, but could shop, drive, and tend to some personal care. The ALJ also found that Ms. Hamman was mildly restricted in her social functioning. Ms. Hamman had a small social circle consisting primarily of immediate family, interacted well with customers and had made at least one friend at work. Her impairments created moderate difficulties with concentration, persistence, and pace. Ms. Hamman needed a high level of supervision at times and became confused. Ms. Hamman also struggled with persistence and concentration at work, including lack of motivation to work and occasional problems with counting correct change.

The ALJ found that Ms. Hamman had the residual functional capacity to perform a full range of work at all exertional levels but with a number of discrete limitations. The ALJ further found that Ms. Hamman was capable of performing past relevant work experience as a cashier, and also that she could perform other work that existed in significant numbers in the national economy.

The ALJ concluded that Ms. Hamman wasn't disabled within the meaning of the Social Security Act and so wasn't entitled to disability benefits. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II. STANDARD OF REVIEW

The issue before the court isn't whether Ms. Hamman is disabled, but whether substantial evidence supports the ALJ's decision that she wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue,

573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

III. Discussion

Ms. Hamman argues that the ALJ made several errors requiring remand: 1) that the ALJ improperly weighed certain medical and psychological opinion evidence; 2) that the ALJ erred in evaluating Ms. Hamman's ability to complete daily activities with regards to her residual function capacity; and 3) that the ALJ erred in not evaluating Ms. Hamman's work record as unique to Ms. Hamman. Ms. Hamman asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

4

*A. The ALJ's Weighing of the Medical and Psychological Opinions*

Ms. Hamman first argues that the ALJ didn't properly weigh the opinion of the Social Security Administration consultative examiner, Heath Fervida, Psy.D. Ms. Hamman further argues that that the ALJ didn't properly weigh the opinions of consultative examiners Marilyn Nathan, Ph.D., and Frank Choate, Psy.D.

1. Social Security Administration Consultant's Opinion

*i.    The ALJ Ignored Relevant Medical Evidence*

Ms. Hamman asserts that the ALJ improperly weighed the opinions of the Social Security Administration consultant, Dr. Fervida, because the ALJ "simply disagreed with its own hired specialist" and so improperly discounted Dr. Fervida's findings. The Commissioner responds that the ALJ properly weighed Dr. Fervida's opinion, finding that Dr. Fervida's opinion held "little weight" because his opinions were based primarily "on statements of [Plaintiff's mother] and 13 year old daughter, and not [Plaintiff's] actual abilities and achievements."

In 2014, Dr. Fervida noted that Ms. Hamman would have great difficulty with sustained weekly activity and taking care of her home without help. Dr. Fervida also observed that Ms. Hamman "need[ed] a great deal of support from others to complete her daily task, and would likely have difficulty in social interactions at an age appropriate level." The ALJ decided that, while Ms.

5

Hamman faced mild to moderate impairments in her daily life, the main accounting of these difficulties in Dr. Fervida's examination came from Ms. Hamman's mother and adolescent daughter. It is implied, but not explicitly stated, that this undermines the credibility of Dr. Fervida's medical opinion.

The ALJ, however, favorably credited Ms. Hamman's competence with her work duties (working the cash register, putting chickens in the rotisserie, running the meat slicer, helping customers, and cleaning up) – information also garnered during Dr. Fervida's examination. The ALJ also favorably considered Ms. Hamman's statement to Dr. Fervida that she felt no "difficulty" with completing her work tasks. The ALJ also credited Ms. Hamman's statement to Dr. Fervida about her previous work history as a Kmart cashier.

While the ALJ gave parts of Dr. Fervida's opinion "little weight," the ALJ also directly relied on other parts of Dr. Fervida's opinion in its decision to deny Ms. Hamman's applications. "An ALJ mustn't selectively consider medical reports." Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009). It's "not enough for the ALJ to address mere portions of a doctor's report." *Id.* at 678. "Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, [he] has to decide what weight to give that opinion" and provide "good reasons" for doing so. Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010). The ALJ addressed both pro-plaintiff findings and pro-defendant findings in Dr. Fervida's consultative opinion. The ALJ appears to have dismissed the pro-plaintiff findings as having "little weight" while considering pro-defendant

findings in its ultimate decision to deny Ms. Hamman's applications. In other words, the "ALJ identified pieces of evidence in the record that supported her conclusion that [Ms. Hamman] wasn't disabled, but she ignored related evidence that undermined her conclusion." Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014). Such an approach to the record is impermissible. *Id.* at 698.

The ALJ didn't adequately consider the regulatory factors when assigning Dr. Fervida's opinion "little weight." The ALJ didn't "explicitly address the checklist of factors as applied to the medical opinion evidence." Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010) (these factors include "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; types of tests performed; and the consistency and support for the physician's opinion."); *But see* Henke v. Astrue, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (noting that the ALJ didn't err when it "did not explicitly weigh every factor while discussing her decision to reject [the doctor's] reports.").

Accordingly, remand is warranted. The ALJ didn't properly weigh the medical opinions of Dr. Fervida. The ALJ can't "selectively consider medical reports" of consultative examiners. Myles v. Astrue, 582 F.3d at 678. In the case of Dr. Fervida, the ALJ shouldn't have, on the one hand "identified pieces of evidence in the record that supported her conclusion" while on the other hand "ignored related evidence that undermined her conclusion." Scrogham v. Colvin, 756 F.3d at 698. In the case of all three consultative examiners, and "inadequate evaluation of a treating physician's opinion requires remand." Cullinan v.

7

Berryhill, 878 F.3d 598, 605 (7th Cir. 2017); Meuser v. Colvin, 838 F.3d 905, 912 (7th Cir. 2016); Clifford v. Apfel, 227 F.3d 863, 870-871 (7th Cir. 2000). When weighing these opinions, the ALJ should directly address the relevant regulatory factors when making its determination. Campbell v. Astrue, 672 F.3d at 308.

*ii.     Dr. Fervida as an agency physician*

Ms. Hamman next asserts that the ALJ erred in giving Dr. Fervida's opinion "little weight" despite Dr. Fervida being the Social Security Administration's own examining physician. The Commissioner doesn't address this argument in her response.

While discounting an agency's own physician isn't always a violation of the substantial evidence requirement in Scott v. Astrue, it would be "expected to cause a reviewing court to take notice and await a good explanation for this unusual step." Scott v. Astrue, 647 F.3d at 739; Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014). Instead of considering Dr. Fervida's opinion, the ALJ focused on the medical opinion of a different state agency mental consultant, Dr. Hill, whose examination occurred later than the examination of Dr. Fervida. "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." Beardsley v. Colvin, 758 F.3d at 839. The ALJ didn't explain adequately why Dr. Hill's opinion was given substantial weight over Dr. Fervida's.

8

While the ALJ cites Dr. Hills opinion, its rationale for weighting Dr. Hill's opinion over that of Dr. Fervida's consists of evidence from sources not contained in Dr. Hill's report. And what information the ALJ did rely on from Dr. Hill's report didn't necessarily contradict Dr. Fervida's opinion.[1] Although resolution of contradictory information is subject to the ALJs discretion, the ALJs lack of explanation for for what she did wasn't sufficiently articulated. *See* <u>Clifford v. Apfel</u>, 227 F.3d at 870-871; <u>Larsen v. Astrue</u>, 615 F.3d 744, 749 (7th Cir. 2010) ("[a]n ALJ who does not give controlling weight to the opinion of the treating physician must offer good reasons for declining to do so.").

Remand is warranted so that the ALJ can properly weigh Dr. Fervida's medical opinion consistent with her status as an SSA consultative examiner.

### a. <u>Dr. Frank Choate's Opinion</u>

Ms. Hamman contends that the ALJ didn't adequately consider the opinion of consultative examining physician, Dr. Frank Choate. Dr. Choate's examination took place on July 24, 2012, which was within the relevant time period of Ms. Hamman's alleged disabilities. Ms. Hamman says Dr. Choate's medical opinion is consistent with Dr. Fervida's later findings. The Commissioner argues that Dr. Choate's opinions don't support those of Dr. Fervida and might

---

[1] Additionally, the ALJ found that Dr. Hill's opinion of Ms. Hamman was supported by another doctor, Dr. Donna Unversaw when Ms. Hamman was examined on reconsideration.

be "significantly inconsistent" with Dr. Fervida's filings. Dr. Choate's opinion isn't the record.

The Commissioner's argument is of no matter. The ALJ didn't adequately consider the opinion of Dr. Frank Choate in its decision to deny Ms. Hamman's applications. The Commissioner concedes that Dr. Choate's examination was performed during the relevant time period, but doesn't address the absence of the examination in the record. "[A]n inadequate evaluation of a treating physician's opinion requires remand." Cullinan v. Berryhill, 878 F.3d at 605; Meuser v. Colvin, 838 F.3d at 912 (finding that the ALJ erred when it ignored the findings of a consultative doctor).

### b. Dr. Marilyn Nathan Opinion

Ms. Hamman next argues that the ALJ didn't adequately discuss the opinion of Dr. Marilyn Nathan, Ph.D. The Commissioner argues that Dr. Nathan's medical opinion falls outside the relevant time period, and that the report was authored by C. Newman-Aumiller, M.A. with Dr. Nathan providing only a "supervisory signature." The Commissioner implies, but doesn't explicitly state, that the ALJ properly ignored the opinion because Dr. Nathan only provided a supervisory signature.

The ALJ didn't adequately consider Dr. Nathan's medical opinion in its decision to deny Ms. Hamman's applications. Again, "an inadequate evaluation of a treating physician's opinion requires remand." Cullinan v. Berryhill, 878

F.3d at 605. To the Commissioner's point, there's no evidence in the record that Dr. Nathan herself examined Ms. Hamman. Instead, her signature amounts to a mere countersignature. Ms. Hamman also misses the mark by suggesting that Dr. Nathan "seemed to have been hired by the SSA to examine [the plaintiff]." The record is clear that this examination occurred on July 6, 2007, years before the relevant period. Ms. Hamman's first applications for social security benefits were filed in March 2012. Medical opinions rendered outside the relevant period aren't afforded much weight. *See* Norem v. Colvin, 2015 U.S. Dist. LEXIS 141499, *12-*13, *20-24 (N.D. Ind. Oct. 19, 2015). While this fact can lead an ALJ to assign little weight to the medical opinion, the ALJ must still consider the opinion. Even if the ALJ was unsure about how to properly weigh Dr. Nathan's countersignature, the ALJ should have recognized that the examining school psychologist, C. Newman-Aumiller, M.A., was an "acceptable medical source" under C.F.R. § 404.1502(ii). The medical opinion should not have been ignored – "the ALJ must consider the medical evidence in the record and all other relevant evidence." McWilliams v. Berryhill, 2017 U.S. Dist. LEXIS 62555, *33 Court: (N.D. Ill. April 25, 2017); 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). *See* Craft v. Astrue, 539 F.3d 668, 675-76 (7th Cir. 2008).

Remand is warranted so that the ALJ can properly weigh the medical opinion of C. Newman-Aumiller, M.A. and signed by Dr. Nathan. After being properly weighed, it may very well be the case that the ALJ still finds that the medical opinion holds little weight.

*B. Ms. Hamman's ability to complete daily activities*

Ms. Hamman next contends that the AJL over-emphasized her ability to complete daily activities, improperly weighting the SSA's claim that she had the residual functional capacity to perform the requirements of her past relevant work. The Commissioner responds that the ALJ properly determined that Ms. Hamman's past work experience suggests a residual functional capacity to perform her past relevant work. Specifically, the Commissioner responds that the ALJ determined that Ms. Hamman "performed work as a cashier … within the last [fifteen] years at substantial gainful activity levels.

Past relevant work experience considered in assessing residual functional capacity must have been done at substantial gainful activity levels. 20 C.F.R. Section 401(1560(b)(1), 416.960(b)(1). While the Commissioner argues that Ms. Hamman's previous work experience has met this bar, the ALJ specifically noted that in 2014 and 2015, Ms. Hamman's work activity "did not rise to the level of substantial gainful activity." The ALJ's findings are therefore contradictory. The Commissioner further argues that Ms. Hamman confuses substantial gainful employment with full-time work. This might be true, but it doesn't detract from the ALJ's findings that, for 2014 and 2015, Ms. Hamman wasn't engaged in substantial gainful activity.

In determining that Ms. Hamman had the proper residual functional capacity, the ALJ also relied on the testimony of a vocational expert, who found that there

were a number of jobs within the national economy that Ms. Hamman could perform. The ALJ "compar[ed] the claimant's residual functional capacity with the physical and mental demands of this work." This determination is consistent with the standard applied to ALJs in determining residual functional capacity. Cohen v. Astrue, 258 F. App'x 20, 28 (7th Cir. 2007). The court of appeals, however, "ha[s] repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." Moreno v. Berryhill, 882 F.3d 722, 730 (7th Cir. 2018) (quoting Yurt v. Colvin, 758 F.3d 850, 858-59 (7th Cir. 2014)).

The record lacks a proper discussion on the "limiting effects" of Ms. Hamman's "impairment(s) and the physical demands of [her past relevant work]" See Social Security Ruling 82-62, 1982 WL 31386 (1982). While the ALJ needn't analyze every specific limitation or requirement of every previous job, it must do more than "describe a previous job in a generic way, e.g., 'sedentary,' and on that basis conclude that the claimant is fit to perform all sedentary jobs." Cohen, 258 F. App'x 20, 28 (7th Cir. 2007). The ALJ must, instead, "inquire[] into any differences in what the job requires." Cohen v. Astrue, 258 F. App'x 20, 28 (7th Cir. 2007)

Accordingly, remand is warranted. The ALJ didn't properly consider various factors in determining Ms. Hamman's residual functional capacity. The ALJ must resolve its own contradictory findings. The ALJ must also properly

consider Ms. Hamman's temperamental deficiencies, as well as evidence pertaining to her concentration, persistence, and pace. Moreno, 882 F.3d at 730; Yurt, 758 F.3d 858-859.[2]

### C. Ms. Hamman's Work Record

Finally, Ms. Hamman argues that the ALJ erred by not properly crediting Ms. Hamman's work record. Ms. Hamman argues that "despite [her] extremely low functioning" the ALJ "fails to give her due credibility for her strong work record under the circumstances." The Commissioner argues that the ALJ repeatedly discussed Ms. Hamman's work history.

A review of the administrative record supports the Commissioners argument. The ALJ's discussion of Ms. Hamman's work history was extensive and used as rationale for its determination on a number of issues, including Ms. Hamman's residual functional capacity. Remand on this argument is without merit.

### IV. CONCLUSION

For the foregoing reasons, the court VACATES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

SO ORDERED.

---

[2] Dr. Fervida, whose medical opinion is alleged to have been improperly discounted, found that Ms. Hamman exhibited "poor concentration and frustration tolerance."

ENTERED:   September 18, 2018

                              /s/ Robert L. Miller, Jr.
                         Judge, United States District Court